UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HENRY ADAMS, JR.,
       Plaintiff,

v.

LESLIE McNAMARA,
RONALD GRECO MD,
EGAR BANGSIL,
STATE OF NEW YORK,
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,
       Defendants.

**DECISION
and
ORDER**

08-CV-832A(F)

APPEARANCES: DUKE HOLZMAN PHOTIADIS & GRESENS, LLP
       Attorneys for Plaintiff
       BERNADETTE J. CLOR, of Counsel
       1800 Main Place Tower
       350 Main Street
       Buffalo, New York 14202

       ANDREW M. CUOMO
       New York State Attorney General
       Attorney for Defendants
       KIM S. MURPHY,
       Assistant N.Y.S. Attorney General, of Counsel
       Main Place Tower, Suite 300A
       350 Main Street
       Buffalo, New York 14202

  In this prisoner *pro se* case, Plaintiff alleges claims, beginning in March 2008, of deliberate indifference to his serious physical problems stemming from Defendants' failure to treat a wound to Plaintiff's left thigh and complications associated with the amputation of Plaintiff's left leg below the knee and use of a prosthetic device. The pleadings do not reveal whether the amputation and left thigh wound occurred while Plaintiff was incarcerated, rather, Plaintiff alleges Defendants Greco and Bangsil, while serving as physicians at the Defendant New York State Department of Correctional

Services's ("DOCS") Gowanda Correctional facility ("Gowanda"), failed to treat Plaintiff's wound and complications associated with his prosthetic device such as pain, sores, excess drainage, infection and other injuries.  Plaintiff also alleges that Defendant McNamara, while acting as Gowanda's Deputy Superintendent for Programs, refused to accommodate Plaintiff's physical limitations arising from his handicap, including McNamara's refusal to provide Plaintiff with a non-slip showering aid, forcing Plaintiff to climb stairs, stand for prolonged periods and fall while showering, causing Plaintiff to suffer serious aggravating injuries to his thigh wound and amputation. Plaintiff also asserts that Gowanda staff retaliated against Plaintiff by assigning Plaintiff to an upper floor in the facility after Plaintiff filed grievances based on these allegations making it even more difficult and painful for Plaintiff to move about the facility in connection with his assigned work, attendance at educational classes, and use of the commissary.

According to Plaintiff, despite an outside medical expert's opinion, rendered in July or August 2009, that Plaintiff then required immediate surgery on Plaintiff's left leg infection, Plaintiff was not authorized for this treatment by Defendants until November 2009 when Plaintiff underwent several surgeries at Erie County Medical Center ("ECMC") to remove steel rods in Plaintiff's left leg, and drain Plaintiff's leg because of improper surgery.  The pleadings do not specify which, if any, individuals were specifically responsible for these harms or whether Plaintiff seeks to impose liability on Defendants for these medical problems.  Based on these allegations, Plaintiff asserts Defendants' failure to timely treat Plaintiff and provide reasonable accommodations for his handicap violates Plaintiff's rights under Title II of the Americans with Disability Act, 42 U.S.C. § 12132 (extending prohibition against disability discrimination to prisons and

prisoners) ("ADA"), and violates Plaintiff's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* (" § 504") while Plaintiff was housed at Gowanda. As to Defendants Greco, Bangsil and McNamara, Plaintiff claims their conduct constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Plaintiff's ADA and § 504 claims are asserted against Defendants New York State, DOCS, Dr. Greco, Dr. Bangsil and Ms. McNamara in their official capacities; Plaintiff's Eighth Amendment claim is asserted against Dr. Greco, Dr. Bangsil and Ms. McNamara in their individual capacities. As Plaintiff has not exhausted administrative remedies, *i.e.*, filed a grievance regarding his treatment problems while in DOCS custody after being transferred from Gowanda to DOC's Livingston Correctional Facility, no claims are asserted in this action as to Plaintiff's medical problems during that part of his treatment provided by DOCS.

At Plaintiff's request (Doc. No. 14), by order filed December 1, 2009 (Doc. No. 20), the court assigned the firm of Duke, Holzman, Photiadis & Gresens, LLP ("Duke Holzman") to represent Plaintiff. By papers filed June 15, 2010 (Doc. No. 36), Defendants move to disqualify Duke Holzman. Plaintiff opposed the motion by papers filed June 24, 2010 (Doc. No. 41). Oral argument was deemed unnecessary.

Defendants contend that disqualification is warranted based on the possibility that Dr. Christopher Ritter, an ECMC orthopedic surgeon who treated Plaintiff at ECMC, and as a brother of a member of the Duke Holzman firm, may be called to testify as a fact witness, and that such testimony would be more favorable to Plaintiff than would otherwise be the case. Significantly, Defendants cite to no authority to support this creative proposition and the court's research reveals none. Nor do Defendants point to

3

any provision of the New York Rules of Professional Conduct ("Rules") implicated by the relationship at issue here, and the court's perusal of the Rules reveals no provision that directly or indirectly supports Defendants' theory of disqualification.

On the other hand, available caselaw points to the opposite conclusion. Specifically, at least one court has held that a sibling relationship between a prosecutor and a prospective witness in a criminal case was insufficient to require disqualification and appointment of a special, *i.e.*, different, prosecutor. *People v. County Court, Jefferson County*, 902 P.2d 413, 414 (Colo. App. 1994). Based on the facts of that case, the court found "it would be unreasonable to conclude" that defendant's interest in a fair trial would be undermined by the witness's brother acting as a prosecutor. *Id.* Nor did the court find that such relationship would create "any appearance of impropriety," adverse to the public's perception that defendant had received a fair trial. *Id. See Wheat v. United States*, 486 U.S. 153, 163-64 (1988) (affirming district court's refusal to permit codefendants in criminal matter to be represented by same counsel based on "a showing of a serious potential for conflict" and, *inter alia*, public perception that such conflict would undermine defendant's right to a fair trial). *Compare Costello v. Norton*, 1998 WL 743710, at *7 (N.D.N.Y. Oct. 21, 1998) (stating "it is entirely appropriate for a district attorney to disqualify himself and move for the appointment of a special prosecutor when there may be a potential conflict of interest" under circumstances where district attorney had long-standing working relationship with criminal defendant's father, and district attorney's brother was retained as defense counsel). The court also noted any lack of interest by the prosecuting attorney in the case, aside from the attorney's professional duty. *County Court, Jefferson County*, 902

4

P.2d at 414.  *See also Fischer v. International Tel. & Tel. Corp.*, 72 F.R.D. 170, 173-74 (E.D.N.Y. 1976) (no conflict requiring class action attorney to withdraw existed based on fact that class action's named plaintiff was father of attorney representing class absent any showing that plaintiff would share in attorney's fee to be recovered by son upon success of the class action).

Similarly, in the instant case, the court fails to see any reasonable basis to support Defendants' assertion of potential bias on Dr. Ritter's part without even knowing how Dr. Ritter will testify as there is no indication that Dr. Ritter's deposition has been taken.  Defendants' supposition of Dr. Ritter's potential bias in Plaintiff's favor, sufficient to support disqualification, is therefore purely speculative.  Indeed, as the treatment Plaintiff received at ECMC was, as Defendants revealed in their motion papers, Declaration of Kim Murphy (Doc. No. 36) ¶ 3, pursuant to a contract between ECMC and DOCS, it is unlikely that Dr. Ritter's probable loyalty to his employer, ECMC, would be overridden by any familial bond with his brother whose firm is serving as *pro bono* counsel to a prisoner such as Plaintiff.  If anything, it is Plaintiff who may need to be concerned with the possibility that any favorable testimony, particularly opinion testimony by Dr. Ritter supporting Plaintiff's claims, could be subject to a credibility challenge based on Dr. Ritter's relationship to Plaintiff's assigned law firm.  However, Plaintiff has been fully advised of Defendants' motion and has, according to Duke Holzman, unambiguously reiterated his desire that Duke Holzman continue as his assigned counsel.  Declaration of Bernadette Clor, ("Clor Declaration") (Doc. No. 41) ¶ 4.  The court therefore finds Defendants' fears, predicated on the notion that a physician like Dr. Ritter being called as a witness to testify on the treatment received by

the Plaintiff patient would skew his or her testimony because of the physician's familial relationship with a member of Plaintiff's attorney's law firm, to be without merit. Further, Defendant does not contend Dr. Ritter stands to gain financially from an outcome in Plaintiff's favor. *Cf. Hoatson v. New York Archdiocese*, 280 Fed.Appx. 88, 90 (2d Cir. 2008) (holding no appearance of impropriety or bias by district judge who granted summary judgment in favor of defendant despite fact that judge was member of organization associated with defendant, and judge's brother was a partner in law firm that represented defendant in other litigation because brother's pecuniary interest in case was "too remote, contingent, indirect or speculative to lead a reasonable person to question [judge's] impartiality.").

Although Duke Holzman has revealed it has previously represented Dr. Ritter in connection with unrelated matters, Clor Declaration ¶ 10, as Dr. Ritter is not a party, such prior representations do not disqualify Duke Holzman's representation based on an abuse of prior confidential and privileged information and the attorney's duty of loyalty. *See Kelly v. Greason*, 244 N.E.2d 456, 461 (N.Y. 1968) ("lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect or give the appearance of affecting, the obligations of the professional relationship.") (citing cases and 7 C.J.S. Attorney and client § 47). Whether Duke Holzman's duty to Plaintiff could conceivably, depending on the nature of Dr. Ritter's prospective testimony, be affected by, for example, the need for rigorous cross-examination of Dr. Ritter, has not been raised by Defendants presumably because Defendants have reason to believe, as implied by their motion, that Dr. Ritter's testimony is more likely to be favorable to Plaintiff. Significantly, Defendants do not suggest that a change of counsel will promote

a more rigorous cross-examination of Dr. Ritter if needed. Nor does anything in the record suggest Dr. Ritter's relationship to a Duke Holzman member would cause Dr. Ritter to compromise his professional integrity by testifying in a manner different than if such relationship did not exist. In any event, as stated, Plaintiff desires Duke Holzman remain as his assigned attorney. On this record, the court perceives no such conflicting and disqualifying interest between Duke Holzman and Dr. Ritter as to the instant litigation, and Defendants' attempt to raise one is based primarily on unwarranted speculation.[1]

**CONCLUSION**

Based on the foregoing, Defendants' motion (Doc. No. 36) is DENIED. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2010
    Buffalo, New York

---

[1] Should, however, Dr. Ritter indicate at his deposition that in fact the tenor of his testimony is affected because his brother is a member of Duke, Holzman, an obligation to withdraw as counsel may arise under Rule 1.7 Professional Conduct, 22 N.Y.C.R.R. tit.12 § 1200.0 (2010) in order to preserve Dr. Ritter's usefulness as a witness relevant to Plaintiff's case.